UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

HENRY DAVIS,

                                     PLAINTIFF,
          vs.

THE CITY OF NEW YORK, and "John Doe"
Police Officers 1-15,

                                 DEFENDANTS.

_____

                            INDEX NO.

                            Jury Trial Demanded

                            COMPLAINT

      Plaintiffs HENRY DAVIS, by his attorney, David A. Thompson, of Stecklow & Thompson, complaining of the defendants, respectfully alleges as follows:

## I.      PRELIMINARY STATEMENT

      1.    Plaintiff HENRY DAVIS brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.  In addition, the plaintiff brings claims pursuant to the Americans with Disabilities Act, 42 U.S.C. § 12102(2) and the Rehabilitation Act of 1973, 29 U.S.C. § 705(20).  The Plaintiff brings claims under New York State law, including the Human Rights Law and the common law.  In addition to compensatory and punitive damages, the plaintiff seeks the award of statutory attorneys fees, expenses, and costs.

      2.    Plaintiff HENRY DAVIS is homeless veteran of the armed forces.  On December 31, 2014, Mr. Davis resided at the Borden Avenue Residence for the homeless, at 21-10 Borden Avenue, Long Island City New York.  Non-party Mr. Claude Ruffin also resided at the Borden Avenue Residence.  Defendant police officers entered

the room of Claude Ruffin, who is a totally blind veteran of the United States armed forces, of 62 years of age.  The officers did not verbally identify themselves as police. They physically removed Mr. Ruffin from his room and began to walk him into the corridor and down the hall.  They tried to force him to move faster than Mr. Ruffin, whose mobility is limited, could go.  Mr. Ruffin objected and tried to slow down.  The police began to use force on Mr. Ruffin, pushing him to the floor.  Mr. Ruffin's right arm was injured.  Only when Mr. Ruffin felt the gun and gunbelt of one of the people on top of him did Mr. Ruffin realize that he was dealing with police.  Mr. Ruffin was arrested, and held for approximately 24 hours.  All charges were eventually dismissed pursuant to an ACD.

3.     Plaintiff HENRY DAVIS was in the corridor when the police brought Mr. Ruffin to the ground.  Mr. Davis tried to explain to the police officers that Mr. Ruffin was blind and disabled, and that their treatment of him was unnecessary and wrong.  In retaliation for this, one of the officers ordered Mr. Davis's arrest.  During the arrest, the officers used unnecessary force, pepper spraying Mr. Davis, and attempting to tase him. Mr. Davis was arrested and held for approximately 20 days.  He was prosecuted for offenses he did not commit.  He was required to appear in court approximately multiples times before the charges were dismissed in September 2015.

## II.     JURISDICTION

4.     This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the Fourth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

5.     Plaintiff HENRY DAVIS further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all state law claims and causes of action.

## III.   VENUE

6.     Venue is proper for the United States District Court for the Eastern District of New York, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this district

## IV.   JURY DEMAND

7.     Plaintiffs HENRY DAVIS respectfully demand a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

## V.   THE PARTIES

8.     Plaintiff HENRY DAVIS is a resident of the State of New York.

9.     At the time of the incident complained of herein, the plaintiff was homeless.

10.    Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

11.    Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("NYPD").

12.    At all times hereinafter mentioned, Defendant "John Doe" POLICE OFFICERS 1-15 ("The Defendant POLICE OFFICERS") were duly sworn police officers of the New York City Police Department and were acting under the supervision of said department and within the scope of their employment their.

13.   Plaintiff HENRY DAVIS sues the Defendant POLICE OFFICERS in both their official and individual capacities.

14.   Plaintiff HENRY DAVIS will amend this complaint to name the Defendant "John Doe" POLICE OFFICERS as their identities can be established to a reasonable certainty.

15.   At all times relevant to this action, the defendants were acting under color of state law.

16.   The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

17.   Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope and in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI.   FACTS COMMON TO ALL CLAIMS

18.   Plaintiff HENRY DAVIS is an African American male and a veteran of the United States armed forces.

19.   Plaintiff HENRY DAVIS resided at the Borden Avenue Veterans Residence at 21-10 Borden Avenue, Long Island City New York.   on December 31, 2014, the date of the incident.

20.   The Borden Avenue Residence is long-term homeless shelter or publicly-assisted housing accommodation.

21.   Police officers were wrongfully arresting Plaintiff HENRY DAVIS's friend, Claude Ruffin, who is elderly and totally blind.

22.   Defendant John Doe Police Officers 1-4 entered Claude Ruffin's room.

23.   Claude Ruffin is totally blind, and could not see who it was that entered his room.

24.   Defendant John Doe Police Officers 1-4 did not explain to Claude Ruffin who they were.

25.   Defendant John Doe Police Officers 1-4 took Claude Ruffin out of his room and into the hall.

26.   Claude Ruffin has trouble walking, and normally uses a cane for support.

27.   Defendant John Doe Police Officers 1-4 tried to pull Claude Ruffin down the corridor faster than he could walk.

28.   Claude Ruffin protested and tried to slow down.

29.   Defendant John Doe Police Officers 1-4 tried to put Claude Ruffin in a choke hold.

30.   Defendant John Doe Police Officers 1-4 threw Claude Ruffin to the floor.

31.   Other police officers, Defendant John Doe Police Officers 5-6 joined in the assault on Claude Ruffin.

32.   Claude Ruffin did not know that the people attacking him were police officers

33.   Plaintiff HENRY DAVIS saw the Claude Ruffin did not understand that he was dealing with police officers.

34.   Plaintiff HENRY DAVIS saw that the Defendant POLICE OFFICERS were using unnecessary force.

35.   Plaintiff HENRY DAVIS spoke to the officers to attempt to make sure that they understood that Mr. Ruffin was blind, and could not see who they were.

36.   Plaintiff HENRY DAVIS did not physically interfere.

37.   The Defendant POLICE OFFICERS arrested Plaintiff HENRY DAVIS for speaking to them.

38.   The Defendant POLICE OFFICERS  arrested Plaintiff HENRY DAVIS forcefully. They knocked Plaintiff HENRY DAVIS to the floor, pepper sprayed him, and attempted to tase him.

39.   The taser did not penetrate Plaintiff HENRY DAVIS's sweatshirt, but the pepper spray rendered me temporarily blind and was extremely painful.

40.   Plaintiff HENRY DAVIS spent approximately 20 days in incarceration on false charges.

41.   Plaintiff HENRY DAVIS had to appear numerous times to dispute those charges.

42.   All charges against Plaintiff HENRY DAVIS were ultimately dismissed in September 2015.

43.   Throughout the foregoing assault and arrest, the Defendant POLICE OFFICERS not directly participating in the arrest of Plaintiff HENRY DAVIS witnessed the unlawful conduct of the other officers, had the opportunity to intervene, and failed to do so.

44.   As a result of the Defendants' constitutionally impermissible conduct, Plaintiff HENRY DAVIS  was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

45.   In addition, Plaintiff HENRY DAVIS lost the opportunity to begin a new job.

46.   Plaintiff HENRY DAVIS demands judgment against the defendants in a sum to be determined by the jury at trial.

## VII.   CLAIMS FOR RELIEF

### FIRST CLAIM

### DEPRIVATION OF PLAINTIFFS' CIVIL RIGHTS

47.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

48.   All of the aforementioned acts of Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS were carried out under the color of state law.

49.   All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

a.   To freedom from seizure and arrest not based upon probable cause;
b.   To freedom from being subjected to false criminal charges by the police;
c.   To freedom from excessive force being used upon him; and
d.   To freedom from retaliatory prosecution.

50.   All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the Fourth and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

51.   As a result of the Defendants' constitutionally impermissible conduct, Plaintiff HENRY DAVIS was caused to suffer personal injuries, violations of their civil rights, mental and emotional distress, and loss of liberty.

52.   Plaintiff HENRY DAVIS demands judgment against the defendants in a sum to be determined by the jury at trial.

SECOND CLAIM

FALSE ARREST

53.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

54.   Plaintiff was subjected to false arrest by the Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS on December 31, 2014.

55.   Plaintiff was arrested without a warrant and without probable cause.

56.   As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

57.   Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

THIRD CLAIM

FAILURE TO INTERVENE

58.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

59.    Throughout Plaintiffs' December 31, 2014 arrests by the Defendant POLICE OFFICERS, each of the individual Defendant POLICE OFFICERS had an affirmative duty to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights.

60.    Each of the individual Defendant THE CITY OF NEW YORK Police Officers failed to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights despite having had realistic opportunities to do so.

61.    Each of the individual Defendant THE CITY OF NEW YORK Police Officers failed to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

62.    As a result of the aforementioned conduct of each of the individual Defendant THE CITY OF NEW YORK Police Officers, Plaintiff's constitutional rights were violated.

63.    As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

64.    Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

FOURTH CLAIM

EXCESSIVE FORCE

65.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

66.    On December 31, 2014 the Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS used excessive force against Plaintiff HENRY DAVIS.

67.    At no point did the circumstances presented to the Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS' support the above-mentioned applications of force on the Plaintiff.

68.    As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

69.    Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

<u>FIFTH CLAIM</u>

<u>VIOLATION OF THE AMERICANS WITH DISABILITIES ACT AND THE REHABILITATION ACT</u>

70.    Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

71.    Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS who interacted with Claude Ruffin knew he was blind, and therefore disabled.

72.    Claude Ruffin's disabilities make him a "qualified individual," as defined by the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12102(2) and the Rehabilitation Act of 1973, 29 U.S.C. § 705(20).

73.   Defendant THE CITY OF NEW YORK is a public entity that receives federal funding and is subject to the Title II of the ADA and the Rehabilitation Act.

74.   Defendant THE CITY OF NEW YORK and the Defendant POLICE OFFICERS who interacted with Claude Ruffin knew he was blind, and therefore disabled.

75.   42 U.S.C. § 12132 (Title II of the American with Disabilities Act) states "that no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity."

76.   The Rehabilitation Act pursuant to § 504 provides, "[n]o otherwise qualified individual with a disability in the United States ... shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance or under any program or activity conducted by any Executive agency[.]" 29 U.S.C. § 794.

77.   As a public entity, Defendant THE CITY OF NEW YORK comes under the mandate of Title II of the Americans with Disabilities Act and therefore is obligated to ensure that it provides reasonable accommodation to qualified individuals with respect to its benefits of the services, programs, or activities and does not discriminate against qualified individuals.

78.   Defendant The City of New York is subject to the Rehabilitation Act.

79.   The actions of the NYPD qualify as benefits of the services, programs, or activities of Defendant THE CITY OF NEW YORK, under Title II of the American with Disabilities Act.

80.   Defendant THE CITY OF NEW YORK and its employees the Defendant POLICE OFFICERS were under a statutory duty to provide services, including police services, in a manner equivalent to the services provided those not suffering Claude Ruffin's disability.

81.   Defendant THE CITY OF NEW YORK and its employees the Defendant POLICE OFFICERS were under a statutory duty to provide reasonable accommodation to Claude Ruffin's disability.

82.   Defendant THE CITY OF NEW YORK and its employees the Defendant POLICE OFFICERS failed to do so.  The Defendant POLICE OFFICERS failed to verbally identify themselves as police officers.  They failed to transport Claude Ruffin out of his room, into the corridor, and down the corridor in a manner consistent with his blindness and physical limitations in mobility.

83.   These failures constitute discrimination in violation of Title II of the Americans with Disabilities Act, 42 U.S.C. § 12132.

84.   Pursuant to 42 U.S.C. § 12203, it is unlawful to retaliate against "any individual" because such individual has opposed discrimination made unlawful by the Americans with Disabilities Act.

85.   Furthermore, pursuant to 42 U.S.C. § 12203, it is unlawful to "coerce, intimidate, threaten, or interfere with any individual" … "on account of his or her having

aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by this chapter."

86.   Plaintiff HENRY DAVIS opposed discrimination against Claude Ruffin by the Defendants and denial of privileges and accommodations under the ADA and the Rehabilitation Act.

87.   In retaliation, Plaintiff HENRY DAVIS was arrested, injured, and prosecuted for a crime he did not commit.

88.   Plaintiff HENRY DAVIS aided and encouraged Claude Ruffin in the exercise or enjoyment of his rights under the ADA.

89.   The Defendants' arrest and prosecution of Plaintiff HENRY DAVIS served to coerce, intimidate, threaten, and interfere with Plaintiff HENRY DAVIS's aid and encouragement to Claude Ruffin.

90.   As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

91.   Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

SIXTH CLAIM

THE NEW YORK CITY HUMAN RIGHTS LAW
N.Y.C. ADMIN. CODE § 8-102(9)&(18), § 8-107(4),(5),(7)&(13)

92.   Plaintiff repeats, reiterates and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

93.    The New York City Human Rights Law ("NYCHRL") states, in part: "It shall be an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of public accommodation because of the actual or perceived … disability … status of any person directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof…."

94.    The NYCHRL also states: "The term 'place or provider of public accommodation' shall include providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind."

95.    The New York City Human Rights Law ("NYCHRL") states, in part: "It shall be an unlawful discriminatory practice for any person engaged in any activity to which this chapter applies to retaliate or discriminate in any manner against any person because such person has (i) opposed any practice forbidden under this chapter…."

96.    The NYCHRL definition of "reasonable accommodation" is "such accommodation that can be made that shall not cause undue hardship in the conduct of the covered entity's business."

97.    The Defendant CITY OF NEW YORK is a provider of public accommodation within the meaning of these provisions, when it provides police services and when it provides housing to individuals such as the plaintiffs.

98.    The Defendant POLICE OFFICERS are employees of a provider of public accommodation.

99.    The defendants denied Claude Ruffin reasonable accommodations for his disabilities of blindness and limited mobility.  The Defendant POLICE OFFICERS could

have, but did not, verbally identify themselves as police officers, and could have, but did not, transported Claude Ruffin in a way consistent with his blindness and limited ability to move.

100.  The defendants retaliated against Plaintiff HENRY DAVIS for opposing this unlawful practice.

101.  As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

102.  Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

<u>SEVENTH CLAIM</u>

<u>THE NEW YORK STATE HUMAN RIGHTS LAW
EXECUTIVE LAW § 290 ET SEQ.</u>

103.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

104.  The New York State Human Rights Law ("NYSHRL") makes it unlawful for a provider of publicly-assisted accommodations to discriminate in the "conditions or privileges of any publicly-assisted housing accommodations or in the furnishing of facilities or services in connection therewith."

105.  The NYSHRL makes it unlawful to retaliate against any individual who opposed any unlawful discrimination.

106.  The Borden Avenue Residence is a publicly-assisted accommodation owned, controlled or operated by the City of New York.

107.  Defendant CITY OF NEW YORK, through its employees the Defendant POLICE OFFICERS, discriminated against Claude Ruffin in the privileges, conditions, and furnishing of services related to his residence at the Borden Avenue Residence by reason of their failure to make reasonable accommodation for his blindness.

108.  Defendant CITY OF NEW YORK, , through its employees the Defendant POLICE OFFICERS, retaliated against Plaintiff HENRY DAVIS for his opposition to this unlawful failure to accommodate.

109.  As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

110.  Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

## EIGHTH CLAIM

### MONELL

111.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

112.  The Defendants' arrest, prosecution, and use of excessive force against Plaintiff HENRY DAVIS occurred because of unlawful customs, policies and practices of the Defendant CITY OF NEW YORK.

113.  The City of New York, through its police department, have a policy and practice of treating persons with handicaps, such as blindness, deafness, or autism, as criminals.

114.  Such handicapped individuals' behavior, or limitations on their capacity to adapt their behavior, are treated as intentional criminal acts, notwithstanding that the intentional element of such individuals' conduct is negated by the existence of their disability.

115.  The City of New York, through its police department, fails to train its officers to distinguish between behavior that provides probable cause for arrest or for the use of force, and behavior that is merely the result of a person's handicap.

116.  Defendant CITY OF NEW YORK has not provided any training of any kind to its police offices concerning the legal requirement to accommodate disabilities such as blindness.

117.  Defendant CITY OF NEW YORK has provided no training of any kind to its officers concerning how to recognize when an individual is blind.

118.  Defendant CITY OF NEW has failed to provide any training concerning how to deal with blind people.

119.  Defendant CITY OF NEW has failed to provide any written guidelines to police officers for proper interactions with blind people.

120.  For example, the NYPD Patrol Guide, which is approximately 2,000 pages, mentions blind people only once.  It states that police should not take "enforcement action against a blind person for violation of the Canine Waste Law."  This is the only guidance in the entire Patrol Guide for police officers dealing with blind people.

121.  It is foreseeable to a moral certainty that NYPD officers will encounter blind people on a regular basis.

122. It is foreseeable to a moral certainty that blind people will have difficulty, as compared to sighted people, in (among other things):

    a.    Identifying police officers who do not identify themselves verbally;
    b.    Confirming the identity of police officers who identify themselves verbally, in the absence of visual cues such a police uniform or a badge display;
    c.    Understanding instructions or commands of police officers, which may be given in whole or in part through visual means such as signs and gestures;
    d.    Complying with instructions or commands of police officers, because of the need to rely on canes, guide animals, or other means to navigate through physical space safely.

123. It is foreseeable that, when police officers are not trained that these and other difficulties exist will be encountered in police interactions with blind people, these same officers will be likely to violate the rights of such blind citizens.

124. The rights violated by the police in such circumstances will foreseeably not be limited to statutory rights under the ADA and similar statutes.

125. Lack of training for police in the issues identified above will foreseeably result in arrests of the blind people who lacked unlawful intent in their dealings with police, and who were not given a meaningful opportunity to understand and obey police instructions, in violation of such persons' Constitutional rights to equal protection and to be free from arrest without probable cause.

126. Lack of training for police in the issues identified above will also foreseeably result in the arrest of individuals like Plaintiff HENRY DAVIS, who oppose unlawful conduct of the police towards blind people.

127. Training could make the choices police officers face when dealing with blind people and those who oppose discrimination against the blind.

128. The police could be trained, for example:

    a.    To assume that any person they encounter may be blind unless the circumstances clearly indicate otherwise;

b.      Always to verbally identify themselves as police officers unless it is clearly unnecessary to do so;

c.      When it is believed that a person the police encounter may be blind, to ask that person if that is the case;

d.      To permit, unless circumstances render it unsafe, a person who may be blind to inspect the officer's badge by touch;

e.      To inquire, when encountering someone who may be blind, what accommodation the person may require to understand instructions, to obey instructions, to walk and move, etc.;

f.      To independently ensure that a person who may be blind is able to perceive, understand, and comply with any instructions given;

g.      To provide any accommodations requested or apparently necessary, unless to do so would compromise safety or some other important law enforcement purpose;

h.      That blind people are entitled to accommodations as a statutory right;

i.      That a blind person's request for or insistence upon an accommodation is presumptively **not** refusal to obey a lawful order, or in any way a violation of the law;

j.      That sighted people are entitled by statute to oppose denial of accommodations to blind people;

k.      That a sighted person's advocacy for such an accommodation, or opposition to denial of such an accommodation, is presumptively **not** refusal to obey a lawful order, obstruction of governmental administration, or in any way a violation of the law; and

l.      That officers should consider, when determining whether probable cause exists to arrest a person who may be blind, whether the person's blindness was a factor in their allegedly unlawful conduct, including but not limited to, whether such blindness negates *mens rea*.

129.  It would be practically feasible to provide officers such training.

130.  Such training is sufficiently simple that police officers of reasonable competence should be expected to be able to understand and follow it.

131.  If police officers followed such training, incidents like that in which the Plaintiffs were arrested would be significantly less likely to occur.

132.  Instead of providing this training, police provide no training of any sort concerning how to deal with blind people and sighted people opposing discrimination against the blind.

133.  It would also be practically feasible to incorporate such principles into the Patrol Guide.

134.  Defendant CITY OF NEW YORK's failure to incorporate accommodation of the disability of blindness into the Patrol Guide is a de facto policy not to accommodate the disability.

135.  As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

136.  Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

<u>NINTH CLAIM</u>

<u>MALICIOUS PROSECUTION</u>

137.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

138.  Defendants initiated a prosecution against Plaintiff HENRY DAVIS without probable cause to do so.

139.  Defendants continued prosecution of Plaintiff HENRY DAVIS knowing probable cause was absent.

140.  Plaintiff HENRY DAVIS was required to appear in court approximately 10 times to dispute and defend against these charges.

141.  The prosecution terminated in favor of Plaintiff HENRY DAVIS.

142.  As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

143.  Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

## TENTH CLAIM

## FALSE ARREST UNDER STATE LAW

144.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

145.  The Defendant POLICE OFFICERS arrested the plaintiff without a warrant and without probable cause.

146.  The Plaintiff did not consent to their confinement and were conscious of it.

147.  As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

148.  Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

## ELEVENTH CLAIM

## ASSAULT AND BATTERY UNDER STATE LAW

149.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

150.  Defendants assaulted and battered Plaintiff HENRY DAVIS.

151.  As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

152.  Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

<u>TWELFTH CLAIM</u>

<u>MALICIOUS PROSECUTION UNDER STATE LAW</u>

153.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

154.  Defendants initiated a prosecution against Plaintiff HENRY DAVIS without probable cause to do so.

155.  Defendants continued prosecution of Plaintiff HENRY DAVIS knowing probable cause was absent.

156.  Plaintiff HENRY DAVIS was required to appear in court approximately 10 times to dispute and defend against these charges.

157.  The prosecution terminated in favor of Plaintiff HENRY DAVIS.

158.  As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

159.  Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

<u>THIRTEENTH CLAIM</u>

<u>VIOLATION OF THE STATE CONSTITUTION</u>

160.  Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

161.  The Defendants' conduct herein violated the Plaintiffs' rights under the New York State Constitution.

162.  As a result of the Defendants' violations, the plaintiff was caused to suffer personal injuries, violations of his civil rights, mental and emotional distress, and loss of liberty.

163.  Plaintiff demands judgment against the defendants in a sum to be determined by the jury at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Empanel a jury.

[d] Award attorney's fees and costs.

[e] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:    New York, New York
          March 29, 2016

Respectfully submitted,

David Thompson
STECKLOW & THOMPSON
217 Centre Street, 6th Floor
New York, New York 10013
Phone (212) 566-8000
Fax    (212) 202-4952
dave@sctlaw.nyc
ATTORNEY FOR PLAINTIFF